H. H. Tucker, Jr. v. Commissioner. Nellie M. Tucker v. Commissioner.
H. H. Tucker, Jr. v. Commissioner
Docket Nos. 29476, 29477.
United States Tax Court
1952 Tax Ct. Memo LEXIS 333; 11 T.C.M. (CCH) 99; T.C.M. (RIA) 52027; February 4, 1952
*333 Harry B. Barnhart, Esq., for the petitioners. F. S. Gettle, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and additions for fraud as follows: Doc.
1944
1945
1946
No.
Petitioner
Deficiency
Penalty
Deficiency
Penalty
Deficiency
Penalty
29476
H. H.
Tucker,
Jr.
$2,245.24
$1,122.62
$4,144.82
$2,072.41
$9,891.64
$4,945.82
29477
Nellie M.
Tucker
2,245.24
1,122.62
4,144.82
2,072.41
9,891.64
4,945.82 The petitioners allege that the Commissioner erred in taxing that which was not income and did not belong to the petitioners, in taxing deposits rather than income, and in relying upon the report of an incompetent deputy collector instead of making an adequate investigation. The Commissioner has alleged facts to support the imposition of the fraud penalties, on which issue he has the burden of proof. Findings of Fact The petitioners are husband and wife who resided in Texas during the taxable years. They filed separate returns for those years on the community property basis with the collector of internal revenue *334 for the Second District of Texas. They reported, on those returns, income as follows: 1944
1945
1946
Net profit from rents and royalties
$1,077.28
$2,022.20
$ 633.90
Property management
Total receipts
5,815.88
1,711.00
7,623.00
Less interest and rent
3,583.17
774.00
4,253.20
Net profit
2,232.71
937.00
3,369.80
Capital gain
1,900.00
Interest
16.00
Total income (one half reported by each)
3,309.99
2,959.20
5,919.70
The Commissioner determined the deficiencies from an analysis of deposits in and withdrawals from five bank accounts, two in the name of the husband and three in the name of the wife. Those accounts show total annual deposits as follows: 1944
1945
1946
H. H. Tucker, Jr.
$47,533.38
$36,073.35
$55,052.82
Nellie M. Tucker
22,067.88
20,699.02
23,667.86 The Commissioner eliminated duplications such as transfers from one account to another and redeposits, deducted expenses of $10,006.12 for 1944, $5,553.30 for 1945, $6,912.72 for 1946, and held that the petitioners had total income of $19,482.34 for 1944, $28,512.26 for 1945, and $54,351.92 for 1946, taxable one-half to each after allowing *335 each the standard deduction of $500. No error in this action of the Commissioner has been shown by the evidence introduced in this proceeding. The Commissioner also determined that the deficiency for each year due from each petitioner was due to fraud with intent to evade tax. A part of the deficiency for each year due from each petitioner is due to fraud with intent to evade tax. Opinion MURDOCK, Judge: The petitioners, in their original petitions, disclaim that all deposits set out in the Commissioner's computation represented income "but will show to the Court that these deposits represent funds belonging to a large group of investors placed in trust with petitioner as trustee for the purpose of acquiring and perfecting title to potential oil and gas lands and mineral leases to be held in common for development or resale." They further stated that they were prepared "to prove to the satisfaction of the Court that these funds belonging to this group of investors or unit holders have been properly accounted for and not used for the benefit of petitioner individually or for his personal use." The Commissioner moved for a better statement of the facts relied upon by the petitioners *336 and, on August 28, 1950, the petitioners filed supplemental petitions stating that all trust funds received by Tucker during the taxable years from approximately 306 different persons from all over the United States were deposited to his account, each contributor was given a full receipt showing for what purposes the funds would be used, and all checks withdrawing those funds, "now in the hands of petitioner", show to whom paid and for what purpose. Those pleadings, signed by the petitioners and their present counsel, requested that the hearing in the proceedings be held in Dallas, Texas. A notice was sent to the petitioners on February 20, 1951, advising them that the hearing on the merits would be held in Dallas beginning May 21, 1951. The cases were called on May 21, 1951 at Dallas, and, at the request of counsel for the petitioners, were set for trial on May 28, 1951. Counsel for the petitioners stated when the cases were called on the 28th that he was ready for trial, but later asked for a continuance to a later Dallas calendar on the ground that he had no records with him. He also stated that he had not seen the pleadings. He did not make clear to what particular absent records *337 he referred. The petitioners had been notified of the date of the hearing about 90 days in advance, their counsel had been given an extra week from the day upon which the case was first called within which to prepare for trial and no adequate excuse was suggested by him for not being ready or for not having whatever records he needed. A man referred to as an auditor, and who may have had some of the petitioners' records, was in Court. He stated, when addressed by petitioners' counsel, that it would take him about six months to do something in connection with the situation, but if the cases were to go to trial he was ready. The Court, after observing this witness, hearing counsel for both parties, and considering the whole situation, concluded that no sufficient justification for a continuance appeared and there was reason to believe that a continuance to a later Dallas calendar would not prove beneficial even to the petitioners. The parties were directed to proceed. Tucker was sworn and made a few statements in answer to questions, most of which statements were too vague and general to be related by the Court to the taxable years or to any matter in controversy. He did not claim *338 to have adequate books and records. He said he had thousands of copies of receipts given by him for funds received by him, which receipts were available in Dallas. No effort was made to obtain those records. He did not say to what years they related. He said that funds had been "donated" to him in response to thousands of letters of solicitation, but he was not specific as to amounts or the relation, if any, they bore to the funds involved herein. He admitted using some of the funds for himself but in much smaller amounts than the bank withdrawals would indicate. He mentioned the word "trust" but failed to show the creation of any trust or that any of the income being taxed by the Commissioner belonged to any trust. No fiduciary returns had been filed. The Court is unable to find in his testimony any basis for a finding of fact which would weaken the deficiency determinations made by the Commissioner. It does not appear from the record in this proceeding that any records of the petitioners were not available for the trial or that any existing records, if produced in Court, would enable these petitioners to show error in the determinations of the Commissioner. The petitioners used for *339 their own benefit a large part of the funds deposited in their personal bank accounts during the taxable years. It does not appear that they had any intention or means of reimbursing anyone for the use of those funds. Thus, even if Tucker had given numerous persons receipts for some funds received from those persons, nevertheless, that would not overcome the Commissioner's holding that the amounts here involved were income of these petitioners during the taxable years. The evidence introduced by the petitioners fails to overcome the presumption of correctness which attaches to the determination of the Commissioner or to show error in those determinations. The Commissioner called the agent who made the examination on which the deficiencies were determined. He explained what the bank records and checks showed. The Commissioner may resort to bank records where, as here, the taxpayers failed to keep adequate records. , certiorari denied ; . The deficiencies must stand. The Commissioner has, by statute, the burden of proof to establish that a part of each *340 deficiency was due to fraud with intent to evade tax. He alleged in his answers filed September 25, 1950, that each petitioner, fraudulently and with intent to evade tax, reported less than his or her true income in large amounts which were stated, and the difference in each case represents the basis of the deficiency. He further alleged that each petitioner had received large amounts of income from various sources, deposited it in banks and, with fraudulent intent to evade tax, failed to report it. The Court's Rule 15 requires the taxpayer to reply within 45 days to any answer which sets forth facts upon which the Commissioner relies to sustain an issue in respect to which he has the burden of proof under a statute. Neither petitioner filed any reply within the 45 day period or later. The Court's Rule 18 provides that under such circumstances the Commissioner, within 45 days after the expiration of the time fixed for filing the reply, may file a motion with the Court calling attention to the fact that the reply has not been filed within the specified time and certain material allegations of fact have not been denied, and requesting the Court to enter its order that those particular *341 allegations shall be deemed to be admitted. The Commissioner so moved in this case. The rule further provides that the Court will serve a copy of this motion upon the other party and issue an order to show cause returnable on or before a date certain. That rule was designed to make sure that the petitioner would be made doubly aware, first, by the service of the answer, and, second, by the service of the order to show cause, of the necessity of a reply if he had any basis for denying the allegations of the answer. Its purpose was also to require no further proof of fraud in cases in which the petitioner chose, by failing to deny the allegations, to require no evidentiary proof. The order to show cause was served upon the petitioners but they failed to respond, to ask permission to file a reply late, or to make any attempt to show cause why the allegations of the answer to support the fraud charge should not be deemed admitted. Thereupon, the Court entered an order granting the respondent's motion that the allegations be deemed admitted. Nevertheless, the petitioners, at the hearing on May 28, 1951, were given the opportunity to prove any facts pertinent to the fraud issue. However, *342 they did not prove any facts which would overcome the facts established prima facie by the method described above. The evidence introduced by the Commissioner tends to support his allegations of fraud in that large amounts used by the petitioners for their own benefit were not reported as income. It is held that the Commissioner has sustained his burden of proof on the fraud issue as to each deficiency for each year. Decisions will be entered for the respondent.